In the Interest of J.C.K.,
a Minor Child.

No. 10–01–00400–CV.

Court of Appeals of Texas,
Waco.

May 12, 2004.

---

Lanelle L. McNamara, McNamara & McNamara, Waco, for Thomas Jake Vannatta.

Stephen N. Smith, Martin, Showers, Smith & McDonald, Hillsboro, for J.C.K.

Rhonda A. Pressley, John B. Worley, Asstistant Attorneys General, Austin, for The State of Texas.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## OPINION

FELIPE REYNA, Justice.

The trial court adjudicated Thomas Jake Vannatta to be J.C.K.'s biological father and ordered Vannatta to pay current and retroactive child support, prenatal and postnatal health care expenses, and attorney's fees. Vannatta presents multiple issues on appeal challenging the amounts the court ordered him to pay.

## BACKGROUND

The Attorney General initiated parentage and child support proceedings with the Title IV–D agency (commonly referred to as the Title IV–D "court") on behalf of J.C.K. and his mother Kerrie Kolacek in June 1997. The associate judge signed an order in November 1997 adjudicating Vannatta's status as J.C.K.'s biological father. The order required Vannatta to pay: prospective child support of $240 per month, fifty percent of J.C.K.'s unreimbursed medical expenses, and $8,000 in retroactive child support to be paid at the rate of $110 per month. Kolacek appealed to the district court.

After a two-part hearing, the district court rendered an order adjudicating Vannatta's status as J.C.K.'s biological father and establishing Vannatta and Kolacek as joint managing conservators. The court ordered Vannatta to pay: prospective child support of $378 per month;[1] $41,770 in retroactive child support to be paid at the rate of $150 per month; reimbursement for $7,310 of prenatal and postnatal health care expenses to be paid at the rate of $50 per month; $5,000 in trial attorney's fees to be paid at the rate of $50 per month; and $6,000 in appellate attorney's fees.

Vannatta presents seventeen issues on appeal. Issues one through four challenge the award of prospective child support. Issues five through eight challenge the court's computation of Vannatta's net monthly resources to determine the amount of retroactive child support. Issues nine through eleven challenge the court's alleged failure to consider mitigating factors in awarding retroactive child support. Issue twelve challenges the court's award of postjudgment interest for retroactive child support. Issues thirteen through fifteen challenge the award of reimbursement for prenatal and postnatal health care expenses. Issues sixteen and seventeen challenge the manner in which the court awarded trial attorney's fees.

## STANDARD OF REVIEW

We review child support orders under an abuse-of-discretion standard.

---

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the court.

1. Except where quoting a specific finding of the trial court, the amounts have been rounded to the nearest dollar for purposes of this opinion.

*Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Baker v. Peterson,* No. 10–02–00113–CV, slip op. at 3, 2004 WL 756622 at *2, 2004 Tex.App. LEXIS 3245, at *4 (Tex.App.-Waco Apr.7, 2004, no pet. h.); *Norris v. Norris,* 56 S.W.3d 333, 337 (Tex.App.-El Paso 2001, no pet.). We do not conduct an independent review of findings of fact in a child support case under traditional legal and factual sufficiency standards. *Baker,* No. 10–02–00113–CV, slip op. at 4, 2004 WL 756622 at *2, 2004 Tex.App. LEXIS 3245, at *5; *London v. London,* 94 S.W.3d 139, 143–44 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *cf. Norris,* 56 S.W.3d at 338. Rather, legal and factual sufficiency are factors which can be considered in determining whether an abuse of discretion has occurred. *Baker,* No. 10–02–00113–CV, slip op. at 4, 2004 WL 756622 at *2, 2004 Tex.App. LEXIS 3245, at *6; *London,* 94 S.W.3d at 143–44; *accord Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991).

■■■ A trial court abuses its discretion when it acts "without reference to any guiding rules and principles" or in an arbitrary and unreasonable manner. *City of San Benito v. Rio Grande Valley Gas Co.,* 109 S.W.3d 750, 757 (Tex.2003) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). A trial court has no discretion in deciding what law applies or in applying that law to the facts of the case. *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.2003) (orig.proceeding); *accord Atty. Gen. of Tex. v. Stevens,* 84 S.W.3d 720, 722 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (failure to analyze or apply law correctly constitutes abuse of discretion); *In re D.S.,* 76 S.W.3d 512, 516

(Tex.App.-Houston [14th Dist.] 2002, no pet.) (same).

## PROSPECTIVE CHILD SUPPORT

Vannatta contends in his first issue that the court abused its discretion by varying from the child support guidelines in determining the amount of prospective child support he should pay without stating the reasons for doing so. He contends in his second through fourth issues respectively that the record contains no evidence or factually insufficient evidence to support Findings of Fact Nos. 7, 8, and 10.

The findings at issue are as follows:

7. Thomas Jake Vannatta's monthly net resources are $2,561.57.

8. The monthly net resources of Kerrie Kolacek are $2,138.

10. The amount of child support if the percentage guidelines are applied to the first $6,000 of Thomas Jake Vannatta's net resources is $377.83 at 14.75% and $409.85 at 16.0%. The amount of child support ordered, $377.83, was calculated by taking 14.75% of Respondent's net resources.

Vannatta argues in connection with these issues[2] that the court abused its discretion by calculating his net monthly resources to include: (1) the entirety of the interest income reported on the 1999 tax return his wife Cindy and he filed; (2) one-half of the rental income from a building held in Cindy's name; and (3) one-half of the profit from a child care business operated by Cindy and her sister. He concludes that the monthly child support would have been $35 less if these items had not been included in calculating his net

2. Vannatta contends in his third issue that the court incorrectly calculated Kolacek's net resources. However, he does not contend that this alleged miscalculation had any impact on

the amount of child support awarded. Accordingly, we do not further address his third issue.

monthly resources. Kolacek does not dispute that the court included these items in calculating Vannatta's net resources. Nor does Kolacek dispute that the court should have included only one-half of the interest income reported on the Vannattas' tax return.

Vannatta characterizes the building and the child care business as community assets subject to Cindy's sole management and control. Kolacek does not dispute this characterization. Thus, Vannatta argues that the assets in question should not be considered in determining his net resources because such assets are not subject to any nontortious liabilities he may incur during his marriage to Cindy. *See* TEX. FAM.CODE ANN. § 3.202(b)(2) (Vernon 1998).

Section 154.062 of the Family Code defines what items are to be included in calculating an obligor's net resources. Among other things, the list includes "self-employment income," "net rental income," and "all other income actually being received." TEX. FAM.CODE ANN. § 154.062(b)(3), (4), (5) (Vernon 2002). However, section[3] 154.069(a) expressly prohibits a court from including "*any portion* of the net resources of [an obligor's] spouse" in calculating the amount of child support to be ordered. *Id.* § 154.069(a) (Vernon 2002) (emphasis added).

■ Section 154.069 is a legislative endeavor "to design a neutral scheme that would be unaffected by the remarriage of the child support obligor, either for the purpose of increasing or decreasing child support." *Starck v. Nelson,* 878 S.W.2d 302, 306 (Tex.App.-Corpus Christi 1994, no writ) (quoted with approval by *In re Knott,* 118 S.W.3d 899, 905 (Tex.App.-Texarkana 2003, no pet.)). Thus, the Texarkana Court of Appeals has concluded that, even though income generated by a spouse's separate property is community property, no portion of that income should be included in calculating a child support obligor's net resources. *Knott,* 118 S.W.3d at 904. For the reasons which follow, we conclude that the same rule applies to income generated by community property subject to the sole management and control of the non-obligor spouse.

In determining what are the net resources of the non-obligor spouse, only one type of resource plainly must be excluded under section 154.069, the non-obligor spouse's earned income (*i.e.,* "100 percent of all wage and salary income and other compensation for personal services"), even though this is community property. *See* TEX. FAM.CODE ANN. § 154.062(b)(1) (Vernon 2002), § 154.069(a). Notably, a spouse's earnings are classified under marital property law as community property subject to the sole management and control of that spouse. *Id.* § 3.102(a)(1) (Vernon 1998). As such, the non-obligor spouse's earnings are not subject to any nontortious liabilities the obligor incurs during the marriage.[4] *Id.* § 3.202(b)(2).

Because of constitutional and statutory amendments, the line between community property and separate property has been blurred. Under article XVI, section 15 of the Texas Constitution, spouses can by

---

3. The term "section" as used hereinafter refers to a section of the Family Code unless otherwise indicated.

4. Section 3.202(b)(2) actually provides that community property subject to the sole management and control of one spouse is not subject to the nontortious liabilities of the other spouse, unless both spouses are personally liable. TEX. FAM.CODE ANN. § 3.202(b)(2) (Vernon 1998). In the child support context however, the non-obligor spouse would not be personally liable for the child support obligation of the obligor. *See id.* § 154.069 (Vernon 2002).

written agreement convert community property to separate property or vice versa. Tex. Const. art. XVI, § 15. The statutes governing the management of marital property provide a clear legal guideline for differentiating between income-producing property which should be considered for child support purposes as among the assets of an obligor spouse and that which should be considered as among the assets of the non-obligor spouse. Following this approach yields the same result reached in *Knott*. *See* Tex. Fam.Code Ann. § 3.102(a)(2) (Vernon 1998) (income from separate property is community property subject to the sole management and control of the spouse who owns the separate property).

This approach is also consistent with the undisputed manner in which the interest income reported on the Vannattas' tax returns should be considered. *Id.* § 3.102(b) (Vernon 1998) (community property subject to sole management and control of one spouse intermingled with community property subject to sole management and control of the other spouse is subject to their joint management and control). Thus, because the interest income is subject to the joint management and control of the Vannattas, fifty percent is included within Vannatta's net resources.

In addition, this approach is consistent with section 3.202(b)(2), which provides rules for marital property liability. *Id.* § 3.202(b)(2). The Supreme Court has characterized child support as a "liability" of the obligor. *In re A.D.*, 73 S.W.3d 244, 248 (Tex.2002). Community property which is subject to the sole management and control of one spouse is not subject to the liabilities of the other spouse. Tex. Fam.Code Ann. § 3.202(b)(2).

A danger of this approach is that it gives rise to the possibility of fraudulent conduct on the part of an obligor spouse in an

effort to avoid the duty of support. However, the Family Code provides mechanisms to combat such conduct. Section 154.066 permits a court to base a child support award on the earning potential of an obligor if the court determines that the obligor is intentionally unemployed or underemployed. *Id.* § 154.066 (Vernon 2002). Section 154.067 permits a court to "assign a reasonable amount of deemed income to income-producing assets that a party has voluntarily transferred." *Id.* § 154.067(b) (Vernon 2002).

Finally, a court may vary from the child support guidelines "if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." *Id.* § 154.123(a) (Vernon 2002). In determining whether to vary from the guidelines, the court may consider:

- "any financial resources available for the support of the child;"
- "whether the obligor ... has an automobile, housing, or other benefits furnished by ... another person ...;" and
- "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents."

*Id.* § 154.123(b)(3), (10), (17) (Vernon 2002).

It must be noted that the Corpus Christi Court of Appeals has determined that a court should not consider the resources of a non-obligor spouse as a basis to vary from the support guidelines under section 154.123. *See Starck*, 878 S.W.2d at 306 ("Permitting the court to deviate from child support guidelines because the obligor's new spouse contributes to their joint living expenses allows the court to do indirectly what the statute directly prohib-

its."). We agree that the resources of a non-obligor spouse should not be the sole basis to vary from the guidelines. However, if the obligee presents evidence that the obligor has intentionally or voluntarily reduced his earnings or earning potential, then the best interest of the child may dictate that the resources of a non-obligor spouse should be considered in deciding whether to vary from the guidelines. *See* TEX. FAM.CODE ANN. § 154.123(a).

■ Consistent with *Knott,* we hold that no portion of the income generated by community property subject to the sole management and control of the spouse of a child support obligor should be included in calculating the obligor's net resources, absent evidence which would justify a variance from the child support guidelines. The assets in question are community property subject to Cindy's sole management and control. Thus, the court should not have included any portion of the income generated by these assets in calculating Vannatta's net resources. *See* TEX. FAM.CODE ANN. § 154.069(a); *cf. Knott,* 118 S.W.3d at 904.

Accordingly, the court abused its discretion by including income generated by community property subject to Cindy's sole management and control and by including more than one-half of the interest income reported on the Vannattas' tax return in its calculation of Vannatta's net resources. As noted, this miscalculation appears to result in a difference of $35 per month in the child support obligation. Although this figure seems inconsequential on its face, when it is multiplied over the term of the obligation (here assuming until J.C.K.'s 18th birthday), the total variance

is $315.[5] Therefore, the court's error in this regard probably caused the rendition of an improper prospective child support award. *See* TEX.R.APP. P. 44.1(a)(1); *In re Marriage of Thurmond,* 888 S.W.2d 269, 276 (Tex.App.-Amarillo 1994, writ denied). Vannatta's first, second, and fourth issues are sustained.

## RETROACTIVE CHILD SUPPORT

### NET MONTHLY RESOURCES

Vannatta contends in his fifth issue that the court abused its discretion by ordering him to pay $41,770 in retroactive child support because the record contains no evidence or factually insufficient evidence to support Findings of Fact Nos. 19, 28, 29, 30, and 31. He contends in his sixth issue that the record contains no evidence or factually insufficient evidence to support a variance from the child support guidelines. He contends in his seventh issue that the court abused its discretion by including a portion of Cindy's net resources in calculating his own net resources. He contends in his eighth issue that the court abused its discretion by failing to deduct net operating expenses and mortgage payments in calculating his net rental income.

The contested findings of fact state the court's findings with regard to Vannatta's net monthly resources in certain years between J.C.K.'s birth and the filing of this suit. Specifically, Vannatta challenges the court's findings on his net monthly resources in 1985 and from 1994 through 1997.

Vannatta did not produce a 1985 tax return or other documentary evidence of

---

**5.** According to the court's order, the prospective child support award commenced on June 1, 2001. J.C.K. was born on February 13, 1984. Thus, his 18th birthday was on February 13, 2002. Accordingly, the prospective child support obligation was for a term of 9 months, assuming the obligation terminated on J.C.K.'s 18th birthday. *See* TEX. FAM.CODE ANN. § 154.001(a) (Vernon 2002).

his income for that year. He testified that he worked for the same company from January 1985 to October 1993. During that period, his gross weekly income fluctuated between $425 and $600. The court based its finding of Vannatta's net monthly resources for 1985 by taking the average of these two figures ($512.50) as his gross weekly income.

Vannatta counters that a review of the court's findings regarding his income between 1985 and 1993 reflects a gradual increase in income during this eight-year period and the court's finding with respect to his 1985 income does not fit within this pattern. Thus, he contends that the court should have considered his gross weekly income for 1985 to be closer to the $425 figure than in the middle. Accepting Vannatta's calculations would lower his 1985 net monthly resources by approximately $278.[6]

True, Vannatta's argument that the gradual progression of his income growth as otherwise reflected in the court's findings makes the lower calculation seem logically correct. However, Vannatta's counsel did not take the opportunity to clarify this after Kolacek's counsel concluded his questioning of Vannatta. Therefore, the only evidence before the court was Vannatta's testimony that he made between $425 and $600 per week between 1985 and 1993.

■ Courts have approved the use of averaging to determine an obligor's net resources when the record contains imprecise information regarding income. *See e.g. Norris*, 56 S.W.3d at 341–42; *Mai v. Mai*, 853 S.W.2d 615, 618–19 (Tex.App.-Houston [1st Dist.] 1993, no writ). Accordingly, we cannot say that the court acted without reference to guiding rules and principles by determining Vannatta's net resources for 1985 in this manner. *See City of San Benito*, 109 S.W.3d at 757. Moreover, Vannatta's testimony regarding his wages constitutes some evidence and factually sufficient evidence to support Finding of Fact No. 19 regarding Vannatta's net resources in 1985.

■ Vannatta's tax returns for 1994 through 1997 provide some evidence and factually sufficient evidence to support Findings of Fact Nos. 28 through 31. Vannatta's fifth issue is overruled.

A review of Vannatta's tax returns and the court's findings with respect to Vannatta's net monthly resources from 1994 through 1997 indicates that the court's calculations do not include community property subject to Cindy's sole management and control. In addition, the court properly accounted for the net operating expenses (including mortgage payments) Vannatta incurred in his own operation of a rent house and Vannatta's losses from a coin business he operated in 1995 and 1996.[7] Vannatta's seventh and eighth issues are overruled.

6. The court found Vannatta's 1985 net monthly resources to be $1,795. If Vannatta's gross weekly income was $425, his gross annual income would have been $22,100 (or $1,842 per month). According to the 2001 tax chart promulgated by the Attorney General, Vannatta's resulting net monthly income under this scenario would be approximately $1,517.

7. The trial court does appear to have inverted the findings for 1995 and 1996. Otherwise the findings appear to be consistent with the evidence. In 1995 for example, Vannatta's salary from the Waco Independent School District was $19,721. Cindy and he reported interest income of $261 that year (1/2 of which [$131] would be attributed to Vannatta). Vannatta had rental income from a rent house of $6,120, but he had operating expenses totaling $6,147 (excluding depreciation). *See* TEX. FAM.CODE ANN. § 154.062(b)(4) (Vernon 2002). In addition, Vannatta reported a net loss of $850 from the operation of a coin business. These figures result in gross annual resources of $18,975 (or $1,581 per month). Applying the tax chart to Vannatta's

Vannatta's contention in his sixth issue, that the court improperly varied from the child support guidelines, depends on affirmative findings on his fifth, seventh, and/or eighth issues. Because we have found against him on these issues, we overrule his sixth issue.

## MITIGATING FACTORS

■ Vannatta contends in his ninth through eleventh issues that the court abused its discretion by awarding $41,770 in retroactive child support without giving proper consideration to mitigating factors including: the cost of his other sons' post-secondary education, the debt service that would be imposed on him as a result of the child support order, the statutory considerations provided by section 154.131(b), Kolacek's thirteen-year delay in telling him of J.C.K.'s birth, the lack of a meaningful relationship between Vannatta and J.C.K. due to this passage of time, and the undue financial hardship that would be imposed on Vannatta and his family as a result of the child support order.

Vannatta focuses primarily on Kolacek's delay in telling him of J.C.K.'s birth. However, Kolacek did retain an attorney who notified Vannatta before J.C.K.'s birth that Kolacek was pregnant with his child. In response, Vannatta consulted with an attorney to determine his rights and responsibilities. Vannatta's attorney mailed a letter to Kolacek's attorney requesting that Vannatta be notified when the child was born and advising that Vannatta would agree to blood testing to determine paternity. Other than a sighting in a bar on one occasion, the parties had no further contact with each other until Kolacek had the Attorney General institute this proceeding.

The version of section 154.131(b) applicable to this case requires a court to consider whether:

(1) the mother of the child had made any previous attempts to notify the biological father of his paternity or probable paternity;

(2) the biological father had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor has provided actual support or other necessaries before the filing of the action.

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 154.131(b), 1995 Tex. Gen. Laws 113, 164 (amended 2001) (current version at TEX. FAM.CODE ANN. § 154.131(b) (Vernon 2002)).

The main thrust of Vannatta's closing argument to the trial court was that any retroactive child support should be limited because Kolacek failed to notify him of J.C.K.'s birth for thirteen years. The court stated in its Additional Finding of Fact No. 9 that it took into consideration the financial hardship on Vannatta when it ordered retroactive child support.

Vannatta presented no evidence regarding his sons's anticipated post-secondary education expenses. He did not make the "debt service" argument before the trial court which he contends in his ninth issue the court should have considered as a mitigating factor.

The only basis on which Vannatta concludes that the trial court failed to consider the mitigating factors he presented is the fact that the court chose to award the

gross monthly resources results in net monthly resources of $1,331 as the court found in Finding of Fact No. 30. The fact that the

court inverted Findings of Fact Nos. 29 & 30 does not impact the computations.

full amount of retroactive child support authorized by the statutory guidelines. However, the court's decision to award the full amount of retroactive support could also be construed as a decision that the mitigating factors presented by Vannatta did not warrant a reduction in the amount of retroactive support.

Section 154.131 vests a trial court with discretion to determine whether to award retroactive child support and the amount of that support. *See In re Valadez,* 980 S.W.2d 910, 913 (Tex.App.-Corpus Christi 1998, pet. denied); *In re S.E.W.,* 960 S.W.2d 954, 956 (Tex.App.-Texarkana 1998, no pet.). Because Kolacek told Vannatta of his probable paternity before J.C.K.'s birth, the trial court could have determined that Kolacek was not solely responsible for the delay in litigating Vannatta's paternity. Accordingly, we cannot say that the trial court abused its discretion when it ordered Vannatta to pay the retroactive child support awarded. Vannatta's ninth through eleventh issues are overruled.

## INTEREST

Vannatta contends in his twelfth issue that the court abused its discretion by requiring him to pay the statutory rate of interest (12 percent per annum) for the retroactive child support awarded. However, Vannatta acknowledges that the statute applicable to this case provided for interest to accrue at that rate. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 53, 1995 Tex. Gen. Laws 3888, 3907 (amended 2001) (current version at TEX. FAM.CODE ANN. § 157.265(c) (Vernon 2002)). Vannatta cites only the 2001 amendment to section 157.265(c) (reducing the applicable rate to 6 percent) as support for his contention.

Vannatta argues that the court could have somehow ordered him to pay retroactive child support without reducing the retroactive support award to judgment. However, he fails to explain how the court could have rendered an enforceable order for retroactive child support without reducing that order to judgment.

The court would have abused its discretion if it had failed to correctly apply the applicable law in this case. *See Kuntz,* 124 S.W.3d at 181; *Stevens,* 84 S.W.3d at 722; *D.S.,* 76 S.W.3d at 516. Vannatta's twelfth issue is overruled.

## HEALTH CARE EXPENSES

Vannatta contends in his thirteenth through fifteenth issues respectively that the court abused its discretion by ordering him to reimburse Kolacek for prenatal and postnatal health care expenses because: (1) Kolacek failed to lay a proper predicate for the admission of testimony she offered in support of the claim; (2) the record contains no evidence or factually insufficient evidence to support the amount of health care expenses for which reimbursement was ordered; and (3) it was inequitable for the court to require Vannatta to pay for health care expenses because he had a policy of health insurance in place which would have covered these expenses had Kolacek timely notified him of J.C.K.'s birth.

Kolacek offered in evidence properly authenticated business records to prove a portion of the health care expenses. For the remainder of the expenses, she provided testimony, relying to some degree on written summaries prepared by her attorney. Kolacek testified that she brought receipts, cancelled checks, and other documents detailing these expenses to the attorney who compiled the expenditures in two lists. The first of these lists, admitted as Defendant's Exhibit 6, details $12,985 in health care expenses. $7,113 of these expenses are documented by other exhibits

admitted in evidence. Kolacek provided testimony to substantiate the other $5,872 referenced in this list. Vannatta's counsel repeatedly objected to Kolacek's testimony on the basis that her testimony is not the best evidence of these expenses and that documentary evidence should be offered to prove the expenses.

Kolacek also testified about the average monthly expenses she incurred in caring for J.C.K. She referred to a document, later admitted in evidence as Petitioner's Exhibit P–43, prepared by her attorney as she testified. Vannatta's counsel again objected that Kolacek's testimony is not the best evidence of these expenses and that supporting documents should be offered to prove the expenses. The court overruled the objection and granted Vannatta a running objection. Kolacek testified about her average monthly expenses from J.C.K.'s birth through the date of the hearing. At the conclusion of Kolacek's testimony, the court admitted, over Vannatta's objection, Petitioner's Exhibit P–43.

Kolacek's testimony (supported by the exhibit) claims average monthly expenses from 1984 to 1989 of $89 for medical care and $20 for medications. From 1990 to 1995, she claims average monthly expenses of $20 for medical care and $10 for medications. From 1996 to 1998, she claims average monthly expenses of $72 for medical care and $10 for medications.[8]

 Vannatta characterizes Kolacek's testimony as the equivalent of a summary of the contents of voluminous writings as contemplated by Rule of Evidence 1006. *See* Tex.R. Evid. 1006. Thus, he contends that, consistent with Rule 1006, the voluminous writings themselves (*i.e.*, Kolacek's receipts, etc.) should have been made available to him for inspection. Kolacek counters that she testified from personal knowledge and characterizes the documents as writings used to refresh her memory under Rule of Evidence 612.[9] *Id.* 612.

 A witness with personal knowledge may testify to expenses incurred without providing documentation to substantiate the testimony. *See Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 112 (Tex.App.-Dallas 1991, no writ); *Jackman v. Jackman*, 533 S.W.2d 361, 362 (Tex.Civ.App.-San Antonio 1975, no writ); 2 Steven Goode et al., Guide to the Texas Rules of Evid § 1002.1 (3d ed.2002). Kolacek stated on several occasions that she was testifying from personal knowledge with regard to the health care expenses. Kolacek's counsel made copies of the summaries available to Vannatta's counsel during trial. *See* Tex.R. Evid. 612. Thus, we conclude that the court did not abuse its discretion by permitting Kolacek to testify about her health care expenses or by permitting her to refer to the summaries during her testimony. Vannatta's thirteenth issue is overruled.

 Kolacek's testimony provides some evidence and factually sufficient evi-

8. The court stated in Additional Finding of Fact No. 8 that it was awarding retroactive child support through December 1997. Vannatta assumes for purposes of the appeal that the court's order for payment of prenatal and postnatal health care expenses likewise covers expenses Kolacek incurred through December 1997. The record seems to support this assumption, so we do not recount that portion of the evidence which describes Kolacek's expenses from 1999 through 2001.

9. We note, however, that a writing used to refresh memory should not be admitted in evidence, except for impeachment purposes. *See Yates v. State*, 941 S.W.2d 357, 363 (Tex. App.-Waco 1997, pet. ref'd); *Ogrydziak v. Ogrydziak*, 614 S.W.2d 474, 476 (Tex.Civ.App.-El Paso 1981, no writ); 1 Steven Goode et al., Guide to the Texas Rules of Evid. § 612.2 (3d ed.2002).

dence to support the court's award of prenatal and postnatal health care expenses. Accordingly, Vannatta's fourteenth issue is overruled.

 Even though Kolacek did not notify Vannatta that she had given birth, the fact that Vannatta knew she was pregnant and that he may be the father of the child is some evidence from which the court may have concluded that Vannatta bears some responsibility for the delay in the initiation of parentage proceedings. Therefore, we cannot say that the court abused its discretion by ordering Vannatta to pay a portion of Kolacek's prenatal and postnatal health care expenses. Vannatta's fifteenth issue is overruled.

### ATTORNEY'S FEES

 Vannatta contends in his sixteenth and seventeenth issues respectively that the court abused its discretion by characterizing the trial attorney's fees awarded as child support because this is not a proceeding to recover delinquent child support and because the characterization would subject him to a constitutionally-prohibited imprisonment for debt if he failed to pay as ordered.

The portion of the court's order at issue states as follows:

> The court finds that Respondent, THOMAS JAKE VANNATTA, should be ordered to pay a portion of KERRIE KOLACEK'S attorney's fees in the sum of Five Thousand and no/100ths Dollars ($5,000.00) and GRANTS JUDGMENT against Respondent in favor of STEPHEN N. SMITH in that amount, with interest at the rate of ten percent (10%) per annum. IT IS ORDERED that the attorney's fees, which were incurred in relation to the child and are in the nature of child support, are taxed as costs, and Respondent, THOMAS JAKE VANNATTA, is ORDERED to pay said

judgment by paying STEPHEN N. SMITH ... by cash, cashier's check, or money order the sum of $50 per month, beginning June 15, 2001, payable on or before that date and on or before the same day of each month thereafter until the judgment is paid in full.

A court may order the payment of attorney's fees as costs in any suit affecting the parent-child relationship. *See* Act of Apr. 11, 1997, 75th Leg., R.S., ch. 15, § 2, 1997 Tex. Gen. Laws 55, 55 (amended 2003) (current version at TEX. FAM.CODE ANN. § 106.002(a) (Vernon Supp.2004)); *Goheen v. Koester*, 794 S.W.2d 830, 836 (Tex.App.-Dallas 1990, writ denied).

 Generally an attorney's fee award cannot be enforced by contempt because of the constitutional prohibition against imprisonment for debt. *See* TEX. CONST. art. I, § 18; *Wallace v. Briggs*, 162 Tex. 485, 488–89, 348 S.W.2d 523, 525–26 (1961); *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). However, attorney's fees awarded in a proceeding to enforce a child support order can be enforced by contempt. *See Ex parte Helms*, 152 Tex. 480, 486, 259 S.W.2d 184, 188 (1953); *Moers*, 104 S.W.3d at 611.

This is not a proceeding to enforce a child support order. Thus, the trial court should not have characterized the attorney's fee award as being "in the nature of child support." Accordingly, we will modify that portion of the judgment by deleting the phrase, "which were incurred in relation to the child and are in the nature of child support." Vannatta's sixteenth issue is sustained. We do not reach his seventeenth issue.

### CONCLUSION

We affirm those portions of the judgment awarding retroactive child support

and reimbursement for prenatal and post-natal health care expenses. We modify that portion of the judgment awarding trial attorney's fees by deleting the phrase, "which were incurred in relation to the child and are in the nature of child support," and affirm that portion of the judgment as modified.

We reverse that portion of the judgment awarding prospective child support and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring in part and dissenting in part.

TOM GRAY, Chief Justice, concurring in part and dissenting in part.

To the extent that the majority affirms the trial court's judgment, I concur. To the extent that the majority reverses and remands, I respectfully dissent.

Even to suggest that the trial court determined prospective child support without reference to any guiding rules or principles or in an arbitrary and unreasonable manner on this record and resulting analysis is almost incomprehensible. After going through a tortured analysis to determine that the trial court erred by including some items in Vannatta's net resources—an analysis that I do not at all find persuasive based on the statute defining what is to be included in net resources, see Tex. Fam.Code Ann. § 154.062 (Vernon 2002)—the majority then proceeds to hold that "the court's error in this regard probably caused the rendition of an improper prospective child support award" of $1.15 per day. This fits with no aspect of my concept of the abuse-of-discretion standard of review.

With the level of scrutiny given to this analysis, I would commend the trial court's exercise of discretion in getting it that close, rather than reversing and remanding the judgment.[1] In short, I think it is irrational to say that the court abused its discretion if it missed the amount that the majority would have awarded by such an immaterial amount. If the majority must have prospective child support reduced by $35.00, it should at least offer the obligee a remittitur. Further, I find no support in Section 154.062, or in the child-support scheme generally, for the proposition that Vannatta's net resources do not include his share of net rental income from community property.

---

1. Could the trial court have determined that Vannatta's obligation should be adjusted pursuant to Family Code Section 154.067? *See* Tex. Fam.Code Ann. § 154.067 (Vernon 2002).