

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00376-CV

IN THE INTEREST OF A.W.G., A
CHILD

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant L.A.G. (Mother) appeals from the trial court's order granting a name change of her minor son, A.W.G., and awarding her $6,340 in retroactive child support. In two issues, Mother argues that the trial court abused its discretion by granting the name change and by improperly calculating the amount of retroactive child support. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother gave birth to A.W.G. in September 2007. Appellee A.W.E. (Father), Mother's fiancé at the time, was present at the hospital, and he signed an acknowledgment of paternity. The form was complete when Father signed it, and although the form already specified A.W.G.'s name, no one asked Father if he wanted to write A.W.G.'s name on the form, nor did Father understand that he had that option. Father and Mother never agreed that A.W.G. would have Mother's surname, but while Mother was pregnant, the couple agreed to change the child's name to Father's surname when they married.

Father broke off the couple's engagement after A.W.G.'s birth, but the two continued to date until Father ended the relationship in March 2009. In July 2009, Mother and Father entered into a Rule 11 agreement that obligated Father to pay Mother $530.62 per month in child support. The agreement also provided Father with visitation rights.

Before entering into the Rule 11 agreement, Mother limited Father's access to the child.[2] Nonetheless, Father significantly contributed to A.W.G.'s financial needs (over $2,000) but generally only saw him when he took him shopping with Mother. Out of his concern for A.W.G.'s safety, Father loaned Mother a four-door sedan so that Mother would not have to transport A.W.G.

---

[2]Mother testified that she did not allow Father to keep A.W.G. alone because she feared that Father was incapable of handling A.W.G.'s respiratory problems.

(along with Mother's other child) in her single-cab pickup truck. In addition to making car and insurance payments, Father gave Mother access to his bank account for six months so that she could purchase things for A.W.G. or for herself on behalf of the child.

In March 2009, Father petitioned the trial court to adjudicate parentage. In his petition, Father requested that the trial court establish his relationship with A.W.G and change A.W.G's surname to match his surname. In August 2010, following a bench trial in July, the trial court signed an order adjudicating parentage, which established the parent-child relationship between Father and A.W.G. and ordered that A.W.G's surname be changed. The trial court also ordered Father to pay Mother $6,340 in retroactive child support.[3]

Mother timely requested findings of fact and conclusions of law. The trial court did not timely file its findings of fact and conclusions of law, but Mother did not file her notice of past-due findings within thirty days of her original request, nor does she argue on appeal that the trial court erred by not entering findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297. Mother moved for a new trial, but her motion was denied.

---

[3]In November 2010, the trial court signed an order adjudicating parentage nunc pro tunc.

### III. NAME CHANGE

In her first issue, Mother argues that the trial court abused its discretion by granting father's request to change A.W.G.'s name. She contends that "there was no evidence upon which the Court could rely to exercise [its] discretion."

#### A. Standard of Review

We review a trial court's decision to change a child's name under an abuse of discretion standard. *In re M.C.F.*, 121 S.W.3d 891, 895 (Tex. App.—Fort Worth 2003, no pet.); *In re Guthrie*, 45 S.W.3d 719, 723 (Tex. App.—Dallas 2001, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).

When a trial court does not issue findings of fact and conclusions of law, as in this case, all facts necessary to support the judgment and supported by the evidence are implied. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). When the record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC*, 83 S.W.3d at 795 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)). A legal sufficiency challenge is a relevant factor for our

4

review, not an independent ground for reversal.[4]  *Boyd*, 131 S.W.3d at 611;

*M.C.F.*, 121 S.W.3d at 895; *see Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223,

226 (Tex. 1991).  We may sustain a legal sufficiency challenge only when (1) the

record discloses a complete absence of evidence of a vital fact; (2) the court is

barred by rules of law or of evidence from giving weight to the only evidence

offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no

more than a mere scintilla; or (4) the evidence establishes conclusively the

opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328,

334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No

Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–

63 (1960).  In determining whether there is legally sufficient evidence to support

the finding under review, we must consider evidence favorable to the finding if a

reasonable factfinder could and disregard evidence contrary to the finding unless

a reasonable factfinder could not.  *Cent. Ready Mix Concrete Co. v. Islas*, 228

S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827

(Tex. 2005).

---

[4]When a party raises such a challenge, we first consider whether the trial court had sufficient evidence upon which to exercise its discretion.  *M.C.F.*, 121 S.W.3d at 895.  Then we ask whether the trial court abused its discretion by acting arbitrarily and unreasonably or without any reference to guiding rules or principles.  *Id.* at 895, 898; *see Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.— Fort Worth 2004, no pet.).

## B. Good Cause and Best Interest

When a trial court renders an order adjudicating parentage, it may order that the child's name be changed "[o]n request of a party and for good cause shown" and if the court determines that the name change is "in the child's best interest." *See* Tex. Fam. Code Ann. § 160.636(e) (West 2008); *M.C.F.*, 121 S.W.3d at 894–95; *see also* Tex. Fam. Code Ann. § 153.002 (West 2008) (providing that best interest of the child is always a factor in any suit affecting the parent-child relationship).

Family code section 160.636(e) does not define good cause. In *M.C.F.*, this court looked to the meaning of good cause in Black's Law Dictionary, which defines good cause as a "legally sufficient reason" and states that it "is often the burden placed upon a litigant . . . to show why a request should be granted or an action excused." 121 S.W.3d at 896; Black's Law Dictionary 251 (9th ed. 2009).

This court and some of our sister courts have identified a nonexclusive list of factors to consider in determining whether the name change is in the best interest of the child, including:

- whether the changed name or the original name would best avoid embarrassment, inconvenience, or confusion for the custodial parent;

- whether the changed name or original name would best help identify the child with the family unit;

- the length of time that the child has carried the original name;

- the degree of community respect associated with the original and changed names;

6

- whether the change will positively or adversely affect the bond between the child and either parent or the parents' families;

- the preference, maturity, and age of the child;

- parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child;

- any delay in requesting or objecting to the name change;

- whether the parent seeking the name change is motivated by an attempt to alienate the child from the other parent; and

- assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time.

*See In re S.M.V.*, 287 S.W.3d 435, 449–50 (Tex. App.—Dallas 2009, no pet.); *M.C.F.*, 121 S.W.3d at 897–98; *Guthrie*, 45 S.W.3d at 725–26; *see also In re A.E.M.S.*, No. 09-07-00410-CV, 2008 WL 4509054, at *4–5 (Tex. App.—Beaumont Oct. 9, 2008, no pet.) (mem. op.); *compare Scoggins v. Trevino*, 200 S.W.3d 832, 837 (Tex. App.—Corpus Christi 2006, no pet.) (addressing twelve factors and determining their neutrality and applicability to specific facts) *with In re H.S.B.*, No. 14-10-00659-CV, 2011 WL 1005559, at *4 (Tex. App.—Houston [14th Dist.] Mar. 1, 2011, no pet.) (synthesizing factors and abandoning factors not deemed in the child's best interest). Thus, the determination of the child's best interest in a name change is fact specific. *S.M.V.*, 287 S.W.3d at 450 (citing *Guthrie*, 45 S.W.3d at 726). Generally, courts reluctantly exercise the power to change a child's name and do so only when the substantial welfare of the child requires it. *M.C.F.*, 121 S.W.3d at 897.

The record demonstrates that Mother and Father never married but that Father proposed to Mother in May 2007 before A.W.G. was born in September 2007. Mother testified that she and Father had agreed during her pregnancy that A.W.G. would have Mother's surname unless the couple got married. Father denied making such an agreement but did acknowledge that A.W.G.'s name would be changed to Father's surname when the couple married. Father testified that he did not know that he had a choice to insist that A.W.G. use Father's surname when he signed the paternity acknowledgment form. Mother stated that she filled in A.W.G.'s name on the birth certificate and that Father was in the room when she did so.

At the time of the trial, A.W.G. was less than three years old. Father testified that A.W.G. should have his surname because children traditionally have their father's last name and because Father has an established family heritage with many males in the family bearing initials similar to A.W.G., if A.W.G. had Father's surname. Father stated that A.W.G.'s initials would resemble Father's grandfather's name, his father's name, his brother's name, and his nephew's name. Father testified that his family has access to and is familiar with A.W.G. and that he plans to continue his active participation in A.W.G.'s life. The order adjudicating parentage appointed Father joint managing conservator and provides him with additional possession of A.W.G. when he turns three years old.

Father testified to the convenience of the name change by stating that A.W.G. has only one regular doctor and no educational or daycare records.

Thus, only one medical record and A.W.G.'s Social Security number would need to be updated in the event of a name change. Father even offered to perform the necessary paperwork to implement the changes. Father has voluntarily financially contributed to A.W.G. since his birth and has not missed a single payment since he entered into the Rule 11 agreement with Mother. Mother agreed that Father probably voluntarily paid at least $2,436.49 for A.W.G.'s benefit before entering into the Rule 11 agreement.

Father stated that based on A.W.G.'s age, no negative consequences would result if his name were changed. Mother testified that she lives with her sister in a house that contains multiple children with different last names. Father, on the other hand, stated that he has no other children and is not expecting to have any other children.

Mother testified that A.W.G. should keep Mother's last name because A.W.G. lives with Mother and because she will be attending his school functions. No evidence suggests that Father will not also be attending A.W.G.'s school functions, but the evidence does indicate that Father's involvement in A.W.G.'s life will increase.

The record indicates that Father waited eighteen to nineteen months to request that A.W.G.'s name be changed; Mother testified that "[Father] had every opportunity, [but] he waited." However, Mother also stated that she assumed Father did not immediately petition for a name change after A.W.G. was born because she and Father were still dating. Mother said that Father did not

break up with her until March 2009, and Father testified that he did not talk seriously to Mother about a name change prior to March 2009. Mother testified that she would not change her name if she ever remarried.

Accordingly, the record contains some evidence that good cause exists to change A.W.G.'s name and that the name change is in A.W.G.'s best interest. Because there is some evidence of good cause and best interest, we must hold that the trial court did not abuse its discretion by granting the name change. *See M.C.F.*, 121 S.W.3d at 895. We overrule Mother's first issue.

## IV. RETROACTIVE CHILD SUPPORT

In her second issue, Mother argues that the trial court abused its discretion by awarding her retroactive child support of only $6,340. She contends that the award is not supported by the family code's child support guidelines and that "[t]here is no evidence to support the subsumed finding that [Father] was making net resources of $905.00 per month" during the relevant time period for calculating retroactive child support.

We review a trial court's order for child support, including an award for retroactive support, for an abuse of discretion. *See Worford*, 801 S.W.2d at 109; *In re J.M.C.*, No. 02-09-00292-CV, 2010 WL 2889671, at *2 (Tex. App.—Fort Worth July 22, 2010, no pet.) (mem. op.); *Guthrie*, 45 S.W.3d at 727. Accordingly, we will not reverse a trial court's decision absent an abuse of discretion. *See Guthrie*, 45 S.W.3d at 727.

10

A "court may order retroactive child support," and if it does so, it "shall use the child support guidelines provided by Chapter 154, together with any other relevant factors." Tex. Fam. Code. Ann § 160.636(g), (h). However, a slight deviation from the guidelines will not constitute an abuse of discretion. *In re Valadez*, 980 S.W.2d 910, 914 (Tex. App.—Corpus Christi 1998, no pet.). The child support guidelines are "intended to guide courts in determining the amount of retroactive child support . . . to be ordered," and they provide that a "court shall consider the net resources of the obligor during the relevant time period," whether "the obligor had knowledge of his paternity," and whether "the obligor has provided actual support or other necessaries before the filing of the action." Tex. Fam. Code Ann. § 154.131(a), (b)(2), (b)(4) (West 2008). Nonetheless, the obligor's net resources may be calculated based on imprecise information. *See In re J.C.K.*, 143 S.W.3d 131, 139 (Tex. App.—Waco 2004, no pet.). The statutory language vests the trial court with discretion to award retroactive child support and the amount of that support. *Guthrie*, 45 S.W.3d at 727.

Here, the trial court based Father's net resources during the relevant time period (September 2007 through July 2009; twenty-one months[5]) on his net resources used to calculate his child support obligation under the July 2009 Rule 11 agreement with Mother. Under the Rule 11 agreement, the parties used the

---

[5]Mother states in her brief that the relevant time period is thirty-five months, running from September 2007 through July 2010. However, her statement directly contradicts the record.

11

child support guidelines to figure Father's obligation. Although the relevant time period in question runs prior to the Rule 11 agreement, both parties testified that Father worked from A.W.G.'s birth in September 2007 until entering into the Rule 11 agreement in July 2009. Mother did not object to any of the admitted documents pertaining to the Rule 11 agreement's monetary breakdown or Father's current income. In fact, Mother relied on the above testimony regarding Father's employment in requesting that the trial judge base the retroactive support award on the amount that Father was paying under the Rule 11 agreement (times twenty-one months). Notably, while making her request, Mother emphasized that the trial court had discretion in making its decision, and she asserted that "at least between [four and five thousand dollars] would be reasonable in this case for retroactive child support." Thus, Mother is now complaining on appeal about receiving exactly what she sought in the trial court (and quite more than what she thought would be reasonable).

We hold that the trial court did not abuse its discretion in basing the retroactive child support order on Father's net resources at the time of the Rule 11 agreement and awarding Mother retroactive child support in the amount of $6,340.[6] We overrule this part of Mother's second issue.

---

[6]The facts of this case are distinguishable from other cases in which the trial court made an arbitrary inference or abused its discretion by ruling on insufficient evidence regarding an obligor's net resources. *See In re J.A.J.*, 283 S.W.3d 495, 501 (Tex. App.—Beaumont 2009, no pet.); *Flores v. Cuevas*, No. 01-06-00257-CV, 2007 WL 624716, at *4 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007, no pet.) (mem. op.).

Mother also argues in her second issue that the trial court erred by not granting interest on its order. She contends that prejudgment interest is generally recoverable as a matter of right.

To preserve an issue for appeal, a party must have presented to the trial court a timely request, objection, or motion specifically stating the grounds for the desired ruling. *See* Tex. R. App. P. 33.1(a)(1). Because Mother did not raise this complaint during trial or in a postjudgment motion, she has not preserved the

Both *J.A.J.* and *Flores* involved an obligor who appealed a trial court's order. Here, the obligee is appealing exactly what she asked for. Also, although the court in *J.A.J.* heard evidence that the obligor had been employed by the same company during all years relevant to the request for retroactive child support (2004 and 2005), presuming that the obligor made the same amount during that time period as he did when he worked for the same company in 2002 and 2003 did not support the trial court's calculation of retroactive child support. *J.A.J.*, 283 S.W.3d at 500. Here, applying the presumption that Father made the same amount of money during the relevant time period as he made during the time period relevant to the Rule 11 agreement does support the trial court's calculation of retroactive child support as requested by Mother. Further, in *Flores*, the court found that the trial court had based its award solely on evidence from the obligor's present earnings, without any evidence of his earnings during any relevant time period or evidence on the other relevant factors. 2007 WL 624718, at *4. In contrast, the trial court here heard evidence regarding A.W.E's employment and income during the relevant time period as well as evidence regarding other relevant factors, namely, Father's voluntary contributions before entering the Rule 11 agreement. Moreover, in *Flores*, the court stated that because there was no evidence of the obligor's net resources during the relevant time period, the court should presume that the obligor had wages or salary during the relevant time period equal to the federal minimum wage for a forty-hour work week. *Id.* at *4 (citing Tex. Fam. Code Ann. § 154.068 (West 2008)); *In re M.M.*, 980 S.W.2d 699, 701 (Tex. App—San Antonio 1998, no pet.) (applying minimum wage presumption to retroactive award). We note that applying a minimum wage presumption here would significantly reduce Mother's award. Likewise, Father testified that he was promoted between 2007 to 2009; therefore, Mother would have received less had Father's income been strictly based on what he made during the relevant time period.

issue for appellate review.  *See In re A.A.F.*, 120 S.W.3d 517, 519 (Tex. App.—

Dallas 2003, no pet.).  We overrule the remainder of Mother's second issue.

## V. CONCLUSION

Having overruled Mother's two issues, we affirm the trial court's order.


BILL MEIER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DELIVERED:  August 25, 2011