

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00324-CV

IN THE INTEREST OF J.F., A
CHILD

----------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 233-472828-10

----------

## MEMORANDUM OPINION[1]

----------

Appellant D.F. (Mother) appeals the trial court's order in her suit to modify the parent-child relationship. We affirm.

## Background Facts

Mother and appellee M.F. (Father) divorced in June 2010. Mother was appointed sole managing conservator of their only child, J.F., and Father was

---

[1]*See* Tex. R. App. P. 47.4.

appointed possessory conservator. The trial court ordered standard possession. It also ordered that Father pay child support of $450 per month.

In May 2013, Mother filed a petition to modify the parent-child relationship. Mother sought an increase of monthly child support payments based on materially and substantially changed circumstances. Father filed a counterpetition, seeking joint managing conservatorship of J.F. and a "week on/week off possession" schedule.

After a bench trial, the trial court appointed Mother and Father joint managing conservators and ordered that they have alternating weekly possession. It also ordered Father to pay Mother $884 in monthly child support and Mother to pay Father $1,580 in monthly child support, netting a $696 monthly payment from Mother to Father. Mother filed a motion for new trial and to modify, correct, and reform the judgment. After a hearing, the trial court denied the motion. Mother then filed this appeal.

**Discussion**

**1. Possession schedule**

In her first issue, Mother argues that the evidence was insufficient to support the trial court's order of alternating weekly possession and that the trial court abused its discretion by failing to apply the statutory presumption that standard possession is in the child's best interest. She further challenges the evidence supporting the trial court's findings that Father has been active in J.F.'s school activities, that Mother had denied Father access and telephone access to

J.F., that J.F. has exhibited signs of low self-esteem, and that both parents work fulltime in the day and part-time some evenings.

A court may modify an order that provides for the possession of and access to a child if (1) modification would be in the best interest of the child and (2) the circumstances of the child, a conservator, or another party affected by the order has materially and substantially changed since the date or the rendition of the order.  Tex. Fam. Code Ann. § 156.101(a)(1)(A) (West 2014).  A rebuttable presumption exists that the standard possession order is in the child's best interest and provides reasonable minimum possession for a parent named as a joint managing conservator.  *Id.* § 153.252 (West 2014).

We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion.  *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Newell v. Newell*, 349 S.W.3d 717, 720 (Tex. App.—Fort Worth 2011, no pet.).  Legal and factual sufficiency are not independent grounds of error in this context, but they are relevant factors in deciding whether the trial court abused its discretion.  *Ruiz v. Ruiz*, No. 02-12-00136-CV, 2013 WL 530958, at *2 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g).  In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion.

3

*In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.); *T.D.C.*, 91 S.W.3d at 872. The traditional sufficiency review is involved in answering the first question and whether the trial court made a reasonable decision in answering the second. *M.M.M.*, 307 S.W.3d at 849.

The best interest of the child must always be the primary consideration in determining the issues of conservatorship and possession of and access to the child. Tex. Fam. Code Ann. § 153.002 (West 2014); *Ruiz*, 2013 WL 530958, at *2; *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing nonexhaustive factors that court may use to determine best interest). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); *M.M.M.*, 307 S.W.3d at 849. The trial court is in a better position than we are to decide issues within custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *M.M.M.*, 307 S.W.3d at 849 (quoting *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)); *see Newell*, 349 S.W.3d at 724 (Livingston, C.J., dissenting).

### a. The evidence

Since the divorce, Father had moved out of his one-bedroom apartment and into a home he shared with his new wife and their child. Father testified that he had never missed a weekend visitation. He did say that when he is offered extra work on the weekends, he takes the work. Father was the leader of J.F.'s

Cub Scout den and attended weekly meetings with J.F. on Thursday nights. Mother testified that she occasionally works eight-hour shifts on the weekends at the Dallas Arboretum.

Father testified that he believed that J.F. was suffering from low self-esteem and that the problem was getting worse. He said J.F. had "been saying a lot lately that he's a horrible child, that he's not going to pass, he's scared of not passing, he's stupid, he's not worthy of anything." Father did not seek professional help for J.F. because under the divorce decree, Mother was the sole managing conservator and he did not have the right. Father believed that alternating weekly possession would help J.F.'s self-esteem. He said, "I would be able to spend more time with him and make sure that he does not develop that low self-esteem that he's getting."

Mother testified that the alternating weekly possession schedule would not be in J.F.'s best interest because she has a "ritual we do all the way Monday through Thursday and he's used to that." She described the rituals as "Monday and Wednesdays after I pick him up we go home, we go over his homework, help him take a bath, put him to bed, say our prayers." She did not believe that J.F. had low self-esteem, and if he did, it came from his school environment. Mother testified that J.F. had good grades, but she admitted to yelling at him for his grades and threatening to pull him from his private school. She did not think that her behavior had an effect on his feelings about school or his self-esteem.

5

Father said that J.F. had been a good student until about a year ago when his grades started to suffer. He testified that Mother told him that J.F. was failing tests necessary to move to the next grade. Father bought flashcards and workbooks to work with him on improving his reading comprehension and math skills.

Father testified that Mother had blocked some of his visitation with J.F. He said that Mother planned a birthday party for J.F. on one of Father's Saturdays the week before J.F.'s birthday and told him that J.F. "could either go to the birthday party or [Father] could give him the news that he's not going to have a birthday party." Mother testified that the divorce decree allowed her to have J.F. for two hours on his birthday, but it was undisputed that the party was not scheduled on J.F.'s birthday.

Father testified that Mother had threatened to "bury [him]" in these proceedings and that she had requested that Father voluntarily terminate his rights to J.F. Father expressed concerns that Mother talks negatively about him and his family in front of J.F. Mother testified that Father calls her names in front of J.F.

Mother discovered deleted emails and photographs on a computer that Father had given J.F. that indicated that Father had inappropriate sexual relationships with some of his students. Mother told Father that she made copies of the images and threatened to disburse them to the Cub Scouts and at Father's places of employment. She admitted that she told Father, "If you don't leave the

6

Cub Scouts, I'll tell them what a sick individual you are and see how the church likes that[.]" She told Father to resign one of his teaching positions or she would expose him, so Father quit that job.

After Mother discovered the photographs, she stopped allowing Father to have J.F. on Tuesday and Thursday nights, which she had previously allowed since they were first divorced. She also stopped allowing Father to call J.F. in the evening when he was in her possession. When asked why she threatened to show Father "what it felt like not to see his son for a month," she answered, "I was angry. I say a lot of means things when I'm angry."

**b. Analysis**

Mother claims that the trial court failed to make requested findings of fact and conclusions of law specifically addressing whether the court applied the rebuttable presumption that the standard possession order is in the best interest of the child and provides reasonable minimum possession for a parent named as joint managing conservator. *See* Tex. Fam. Code Ann. § 153.252. Mother further complains that the trial court failed to specify in its findings of fact and conclusions of law which, if any, of the factors contained in section 153.256 it considered in deviating from the standard and that such failure necessitates reversal. *See id.* § 153.256 (West 2014) (stating that in ordering terms of possession other than a standard possession order, the court shall be guided by the age, developmental status, circumstances, needs, and best interest of the child; the circumstances of the managing conservator and of the parent named

7

as a possessory conservator; and any other relevant factor). Mother filed her request for findings of fact and conclusions of law pursuant to rules 296 and 297 of the rules of civil procedure, not pursuant to section 153.258 of the family code. *See id.* § 153.258 (West 2014) ("[I]n all cases in which possession of a child by a parent is contested and the possession of the child varies from the standard possession order, on written request made or filed with the court not later than 10 days after the date of the hearing or on oral request made in open court during the hearing, the court shall state in the order the specific reasons for the variance from the standard order."). Mother's request for additional and amended findings of fact and conclusions of law likewise does not request findings pursuant to section 153.258. *See id.* (stating that the request must be made "[w]ithout regard to Rules 296 through 299, Texas Rules of Civil Procedure"). The trial court therefore was not required to enter findings and conclusions under the family code, and we infer that the trial court made all the necessary findings to support its judgment. *See Pickens v. Pickens*, No. 12-13-00235-CV, 2014 WL 806358, at *2 (Tex. App.—Tyler Feb. 28, 2014, no pet.) (mem. op.).

Based on the evidence presented at trial, the trial court was within its discretion to order alternating weekly possession. There was evidence that J.F. may be suffering from self-esteem issues. Mother admitted that she yelled at J.F. about his school performance and that she was prone to saying "mean things" in the heat of anger, and the trial court could have determined that Mother

8

contributed to J.F.'s issues. Father was active in J.F.'s extracurricular activities and helped him study. Mother admitted that she had denied Father telephone access to J.F. and had reduced Father's possession of J.F. from their agreed schedule by which they had abided for years. Both parents testified that they hold multiple jobs and occasionally work on weekends. We therefore hold that the trial court did not abuse its discretion by ordering alternating weekly possession. We overrule Mother's first issue.

## 2. Child support

In her second issue, Mother argues that the trial court abused its discretion by setting child support without considering Father's additional income and Father's wife's contribution to Father's living expenses. She also argues that the amounts of Father's income in the trial court's findings of facts and conclusions of law are inconsistent with his testimony and that the trial court did not include Father's income from his teaching position in its child support calculation.

### a. The trial court's findings of fact

The trial court's findings of fact include findings that Father made approximately $4,498.87 per month from the City of Dallas and $2,377.05 per month from Dallas County Community College. At trial, the staff attorney for the Domestic Relations Office, Cynthia Dillard Ince, stated, "My calculations of dad's child support, based on the guidelines of him paying seventeen and a half percent, would be $884.65 plus reimbursement—I think it was one ninety-eight,

9

is what mom's current health insurance is." The trial court's conclusions of law include a conclusion using Ince's calculations of child support.

On appeal, Mother argues that "the record is absent of the underlying income information used to reach this amount. Thus the calculation and the child support order based thereon [are] not supported by sufficient evidence." At trial, the trial court asked both Mother and Father if they wished to inquire into Ince's calculations, and both parties declined. Mother also did not challenge the calculations in her motions for new trial. Mother had thus waived this complaint. *See* Tex. R. App. P. 33.1; *In re R.J.P.*, 391 S.W.3d 677, 678–79 (Tex. App.— Dallas 2013, no pet.).

Mother also complains that the trial court failed to make specific findings of fact as required under section 154.130(b) of the family code. *See* Tex. Fam. Code Ann. § 154.130(b) (West 2014). The trial court is required to make findings under section 154.130(b) only when a party files a written request with the court not later than ten days after the date of the hearing, a party makes an oral request in open court during the hearing, or the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines. *See id.* § 154.130(a) (West 2014). Mother does not argue that the amount of child support varies from the guidelines, and as discussed above, Ince testified that her calculations of Father's child support, which were used in the trial court's child support order, were based on the guidelines. Mother also did not make an oral request during the hearing. And Mother's request for findings

of fact and conclusions of law and her request for additional and amended findings of fact and conclusions of law were made pursuant to rules 296 and 297 of the rules of civil procedure, not pursuant to section 154.130(a) of the family code. *See id.* (stating that the request must be made "[w]ithout regard to Rules 296 through 299, Texas Rules of Civil Procedure"). The trial court therefore was not required to enter findings and conclusions under section 154.130 of the family code, and we infer that the trial court made all the necessary findings to support its judgment. *See Pickens*, 2014 WL 806358, at *2.

### b. Father's additional income

At trial in June 2014, Father testified that he was only teaching three classes at the community college. At the hearing on Mother's first amended motion for new trial, Father testified that in August 2014, he learned that he would actually be teaching eight classes that semester. He said that he had been appointed as a temporary fulltime faculty member and that his schedule of eight classes would only be until December 2014. Father testified that his fulltime appointment was temporary, and there was no evidence that the increase in pay would continue beyond the next four months. The trial court therefore did not abuse its discretion by refusing to consider Father's change in income. *Cf. Starck v. Nelson*, 878 S.W.2d 302, 308 (Tex. App.—Corpus Christi 1994, no writ) ("Temporary slumps do not rise to the level of a material and substantial change in condition and should not support a permanent change in child support levels." (citing *Blanco v. Garcia*, 767 S.W.2d 896, 898 (Tex. App.—Corpus Christi

1989, no writ); *Watkins v. Austin*, 590 S.W.2d 830, 832 (Tex. Civ. App.—Dallas 1979, no writ)).

### c. Father's spouse's income

At the hearing on Mother's motion for new trial, Mother attempted to present evidence regarding Father's spouse's income. Father and Ince objected, and Mother made an offer of proof. No testimony regarding Father's spouse's income was elicited at trial. Mother made no argument that Father's spouse's income was new evidence or provided any appropriate legal reason why she did not present the evidence at trial.[2] Further, an obligor's remarriage does not affect the amount of child support ordered. *See* Tex. Fam. Code Ann. § 154.069 (West 2014) (stating that a court may not add a spouse's net resources to or subtract a spouse's needs from the net resources of a obligor); *In re J.C.K.*, 143 S.W.3d 131, 136 (Tex. App.—Waco 2004, no pet.) ("Section 154.069 is a legislative endeavor 'to design a neutral scheme that would be unaffected by the remarriage of the child support obligor, either for the purpose of increasing or decreasing child support.'") (quoting *Starck*, 878 S.W.2d at 306)). The trial court did not abuse its discretion by refusing to consider Father's spouse's income. We overrule Mother's second issue.

---

[2]Mother secured different counsel after trial. At the first hearing on Mother's motion, Mother's new counsel stated that Mother's original counsel should have produced evidence of Father's spouse's income but failed to do so. Mother has made no claim of ineffective assistance of counsel.

12

## Conclusion

Having overruled Mother's two issues, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED:  October 29, 2015