

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00292-CV

_____

MONTE MARK MITCHELL, Appellant

V.

HANNAH ELIZABETH YOUNG, Appellee

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-717912-22

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Monte Mark Mitchell (Father) appeals the trial court's final decree of divorce (final decree) from Appellee Hannah Elizabeth Young (Mother).[1] Father and Mother share one child together, M.M.M,[2] and Father challenges portions of the final decree that pertain to child support and conservatorship for M.M.M. Specifically, the trial court designated Mother as the parent with the exclusive right to determine M.M.M.'s primary residence; to consent to his medical, dental, and surgical treatments; and to make decisions concerning his education. And after determining that Father's monthly net resources were $7,670.09, the trial court ordered Father to pay Mother child support in the amount of $1,250 per month.

In two issues, Father complains that the trial court abused its discretion by (1) improperly calculating the child support amount and (2) awarding Mother the above-listed exclusive decisions for M.M.M. We will reverse the child-support order, remand on that issue only, and affirm the remainder of the judgment.

---

[1]Mother also filed a notice of appeal, but the prayer in her brief requests that we affirm the trial court's final judgment in all respects.

[2]We use initials to identify the child. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother married in August 2014, and M.M.M. was born in 2015. Mother is a nurse, and Father is a licensed medical doctor and licensed attorney.[3] There is a thirty-four-year age difference between Father and Mother.

In 2019, after forty years of practicing medicine, Father lost his job as an emergency-room physician and did not regain permanent professional employment. The couple separated in 2021, and Mother moved out of the marital residence with M.M.M.

By May 2022, Mother had filed an original petition for divorce, and the next month, Father filed a counterpetition for divorce. The trial court appointed a counselor to conduct a custody evaluation for M.M.M.

A bench trial was held in December 2023.[4] At trial, the appointed counselor testified and provided several recommendations for custody and conservatorship over M.M.M. One such recommendation was that Father and Mother "make mutual decisions with the professional[5] [M.M.M.] sees being the tiebreaker." The counselor

---

[3]Father's education includes a bachelor's degree in science; a master's degree in cancer research, biology, and microbiology; a doctorate of osteopathic medicine; a juris doctorate; and a seminary degree.

[4]At the time of trial, Father was sixty-eight years old, and Mother was thirty-four years old.

[5]The counselor explained that "the professional" could be M.M.M.'s pediatrician, dentist, or therapist.

explained that there appeared to be a power struggle between Father and Mother. Noting that Father is a medical doctor and Mother is a nurse, the counselor testified that she thought it was best for a professional to serve as tie breaker because it limited "any kind of control factors that one parent has over the other."

Mother testified about the nature and deterioration of her relationship with Father,[6] as well as M.M.M.'s education and medical treatment. As for education, Mother explained that she talked with M.M.M. about education and academics, that she had selected a new school for him, and that she attended the meetings at his school. Mother also discussed how she had worked with M.M.M.'s school to develop a 504 plan and IEP plan.[7]

Regarding medical treatment, she explained that Father had medically treated M.M.M. and prescribed him medication without her knowledge or consent. Mother testified that she was concerned about Father's medical treatment because it differed from the plan prescribed by M.M.M.'s pediatrician. She preferred to follow the pediatrician's treatment plan because M.M.M is a pediatric patient. On another

---

[6]Mother testified that Father had placed a tracker on her vehicle and that the police had conducted an investigation. Father was arrested for stalking, but the case was ultimately dismissed. Father confirmed that he placed the tracker on her vehicle without permission and that he should not have done so.

[7]A 504 plan is a written agreement between a school system and a student with a disability, ensuring the student receives necessary accommodations to access education. An IEP, or Individualized Education Program, outlines the specific support and services a child with a disability receives in school.

occasion when M.M.M. was injured and required stitches on his head, Father sutured the injury without Mother's knowledge. Mother insisted that M.M.M. be evaluated at the hospital, but Father had said that "he was a doctor and he knew what was best." Mother went on to testify that she scheduled M.M.M.'s speech therapy, doctor, and dentist appointments.

Mother then testified about Father's work experience. Mother explained that Father had not worked in years but that he occasionally provided medical services out of his home. Father also had an active law license, and he was working on a personal injury case. However, rather than regularly taking advantage of his medical license and his law license, Father volunteered as an electrician's assistant and was paid only for gas money. Mother explained that Father could have been earning money as a doctor during this time.

A certified public accountant (CPA) who conducted an audit of the couple's assets also testified at trial. The CPA determined that Father owned several bank accounts, interest in five businesses and six real properties, and had $598,000 in bank and retirement accounts. Despite his lack of employment, Father had monthly expenses of at least $7,670.09.

Father testified and explained that, despite his numerous applications and interviews, he was unable to find another job in the medical field.[8] Likewise, although

---

[8]On cross-examination, when asked if he could be working as a doctor, he responded, "No. I guess I – it's possible."

5

he is a licensed attorney, he was unable to produce much income working in that profession. Father also provided a financial information statement that showed his total monthly expenses as $7,670.09, and he testified about his federal income tax returns and explained that his income in 2022 was basically zero.[9]

Regarding M.M.M.'s education, Father explained that he and Mother had selected a particular private school for M.M.M. because of its high reviews and ratings. Father further testified that after their separation, Mother pulled M.M.M. out of the private school and enrolled him in public school.[10] He expressed frustration because M.M.M.'s new school was rated much lower than the private school.

Father requested the trial court to name him a joint managing conservator and grant him the exclusive right to determine M.M.M.'s primary residence and agreed to follow the counselor's recommendation of a professional serving as a tie breaker for educational, medical, psychiatric, and physiological decisions.

After hearing all of the testimony, the trial court granted the divorce and signed the final decree. The trial court appointed Father and Mother as joint managing conservators of M.M.M. with a 50/50 possession schedule. However, the trial court granted Mother the exclusive right to designate M.M.M.'s primary residence; to

---

[9]Father testified about his experience as an electrician's assistant. The electrician whom he assisted also testified at trial and explained that he had tried to pay Father for his work but that Father had declined to accept payment.

[10]The trial court's temporary orders provided Mother with the exclusive right to make educational decisions for M.M.M and to determine his primary residence.

consent to (after reasonable notice given to Father) his medical, dental, and surgical treatment involving invasive procedures; to consent to (after reasonable notice given to Father) his psychiatric and psychological treatment; and to make educational decisions for him. The trial court also ordered Father to pay Mother child support in the amount of $1,250 per month. At Father's request, the trial court signed findings of fact and conclusions of law.

Father also filed a motion to modify, correct, or reform the judgment, complaining of the trial court's child-support determination and award of certain exclusive rights to Mother. Father argued that he was a very involved and loving parent and requested that he be awarded equal, independent rights to make decisions for M.M.M. Father also maintained that because he was unemployed, the trial court should have calculated his resources using minimum wage and that his monthly payments should be $231. After a hearing, the trial court declined to modify the final decree. This appeal followed.

## III. DISCUSSION

### A. CHILD SUPPORT CALCULATION

In his first issue, Father complains that the trial court abused its discretion in calculating his child-support obligation because the net-resource finding was erroneously based on his monthly expenses. Because there is insufficient evidence to support the trial court's net-resource finding, we agree.

## 1. Standard of Review and Applicable Law

We review a trial court's judgment granting child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or without reference to guiding principles or when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *B.K.*, 2021 WL 2149621, at *2. Although sufficiency of the evidence is not an independent ground of error under the abuse-of-discretion standard, it is a factor in assessing whether the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

In assessing the legal sufficiency of the evidence to support a trial-court finding, we view the record in a light most favorable to the judgment to determine whether there is more than a scintilla of evidence to support it. *See In re L.B.*, No. 02-19-00345-CV, 2020 WL 1808486, at *6 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.); *In re K.R.*, No. 02-15-00276-CV, 2016 WL 3198611, at *3 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.). For factual sufficiency, we consider and weigh all of the pertinent evidence to determine whether the credible evidence supporting the challenged finding is so weak or the finding is so contrary to the overwhelming weight of the evidence that it must be set aside. *In re B.M.*, No. 02-

8

24-00035-CV, 2025 WL 211330, at *3 (Tex. App.—Fort Worth Jan. 16, 2025, no pet.) (mem. op.); *K.R.*, 2016 WL 3198611, at *3.

For purposes of determining child-support liability, a trial court must calculate the obligor's net resources, including all wage and salary income and other compensation for personal services; interest, dividends, and royalty income; self-employment income; net rental income; and all other income actually being received. Tex. Fam. Code Ann. § 154.062(a), (b). Texas Family Code Section 154.063 mandates that the trial court require "a party to: (1) furnish information sufficient to accurately identify that party's net resources and ability to pay child support; and (2) produce copies of income tax returns for the past two years, a financial statement, and current pay stubs." *Id.* § 154.063. Absent evidence of the obligor's gross resources, the trial court "shall presume that the party has income equal to the federal minimum wage for a 40-hour week." *Id.* § 154.068(a); *M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *4 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.).

In addition to actual earnings, a trial court may take an obligor's earning potential into account when determining child support. *See Giangrosso v. Crosley*, 840 S.W.2d 765, 770 (Tex. App.—Houston [1st Dist.] 1992, no writ). The Family Code provides that if the trial court finds that "the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the [trial] court may apply the support guidelines to the earning potential of the obligor." Tex. Fam. Code Ann. § 154.066(a).

9

But "[t]rial courts consider several factors, not just voluntary unemployment or underemployment, to determine child support." *In re Marriage of Lassmann*, No. 13-09-00703-CV, 2010 WL 3377773, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2010, no pet.) (mem. op.).

Thus, the duty to pay child support is not limited to an obligor's ability to pay from earnings but also includes the obligor's ability to pay from any and all available sources. *See Finley v. Finley*, No. 02-11-00045-CV, 2015 WL 294012, at *5 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.) (mem. op.); *see also In re I.Z.K.*, No. 04-16-00830-CV, 2018 WL 1176646, at *3 (Tex. App.—San Antonio Mar. 7, 2018, no pet.) (mem. op.); *Johnson v. Johnson*, No. 05-99-01155-CV, 2001 WL 371839, at *2 (Tex. App.—Dallas Apr. 16, 2001, no pet.).

"Net resources" include "interest [and] dividends" but not a "return of principal or capital." Tex. Fam. Code Ann. § 154.062(b), (c); *Harrison v. Harrison*, No. 01-11-00639-CV, 2013 WL 485787, at *3 n.1 (Tex. App.—Houston [1st Dist.] Feb. 7, 2013, no pet.) (mem. op.). The Family Code provides that, "[w]hen appropriate, in order to determine the net resources available for child support, the [trial] court may assign a reasonable amount of deemed income attributable to assets that do not currently produce income. The [trial] court shall also consider whether certain property that is not producing income can be liquidated without an unreasonable financial sacrifice." Tex. Fam. Code Ann. § 154.067. The Family Code further provides that income from retirement accounts can be considered part of an

obligor's net resources, but only when it is "actually being received." *Id.* § 154.062(b)(5); *see Attaguile v. Attaguile*, 584 S.W.3d 163, 182 (Tex. App.—El Paso 2018, no pet.) (explaining that undistributed funds in an account that are "unconditionally available" to an obligor are not a net resource because they have not been "received"). Likewise, any income generated from bank accounts in the form of interest payments may be considered as a net resource for purposes of determining an obligor's income, but not the principal funds contained in the bank account itself. Tex. Fam. Code Ann. § 154.062(b), (c); *see Attaguile*, 584 S.W.3d at 183.

"Courts may calculate net resources on 'imprecise information.'" *Ayala v. Ayala*, 387 S.W.3d 721, 727 (Tex. App.—Houston [1st Dist.] 2011, no pet.). But "'[t]here must be some evidence of a substantive and probative character of net resources' in order for the trial court to discharge its duty under [S]ection 154.062." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

If a trial court does not correctly calculate an obligor's net resources according to the Family Code, it abuses its discretion. *See Powell v. Swanson*, 893 S.W.2d 161, 163 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also In re J.C.K.*, 143 S.W.3d 131, 138 (Tex. App.—Waco 2004, no pet.).

## 2. Insufficient Evidence to Support Net-Resource Determination

The crux of Father's first issue is the manner in which the trial court calculated his net resources. He contends that there is no evidence to support the trial court's finding that his net resources are $7,670.09 per month and consequently, the trial court abused its discretion in setting his child-support obligation at $1,250 per month.

The trial court decided that because Father's monthly expenses were $7,670.09, his monthly net income was $7,670.09. Relying on this determination, the trial court found that Father's monthly net resources were $7,670.09 and then used this figure to determine his monthly child-support obligation in accordance with the statutory guidelines. *See* Tex. Fam. Code Ann. § 154.125(b).

The exhibits Father provided at trial included an itemization of his monthly expenses and his 2021 income tax return. The itemization showed his total monthly expenses as $7,670.09, and his 2021 income tax return showed his annual income as a loss of $9,394 along with a net short-term capital gain of $5,448. Father testified that he had not yet filed his 2022 income tax return but that his income in 2022 was basically zero.

Even though Father's income was basically zero, the trial court was authorized to consider Father's ability to pay from any and all available sources, including assigning a reasonable amount of deemed income attributable to his assets. Tex. Fam. Code Ann. § 154.067; *see Finley*, 2015 WL 294012, at *5. But while the CPA testified that Father had approximately $598,000 deposited among eight bank accounts and

interest in five businesses and six real properties, no evidence regarding the liquidity of Father's properties, the valuation of his businesses, or the dividends or withdrawals from his various bank accounts was presented to the trial court.[11] Thus, there was no basis in the record upon which the trial court could have deemed income attributable to Father's assets.

Likewise, there was also no evidence indicating if or when Father had drawn from his separate properties to fund his expenses. Was he paying his expenses from interest and dividends or from return of principal or capital? *See* Tex. Fam. Code Ann. § 154.062(b), (c). The source of this funding dictates whether the trial court could have considered it as a resource. *See id.* § 154.062(b), (c). Was Father receiving funds from retirement accounts, withdrawing from savings, obtaining dividends from investments or bank accounts, or existing on credit cards and loans? Father's evidence does not show how he was paying his monthly expenses.

Mother likewise did not bring forth evidence of Father's net resources. She did not make inquiry, through exhibits or cross-examination, into the means by which he paid his expenses or funded his lifestyle. The evidence at trial merely showed that

---

[11]We note that during direct examination, Father began to discuss in greater detail his resources and how he paid his bills, but Mother objected to his testimony, claiming that despite requesting all of his financial statements in discovery, the statements had not been provided to her. Mother argued that it was unfair for him to testify about his finances because she was unable to effectively cross-examine him or contradict his testimony regarding his resources. Upon cross-examination, Mother did not take the opportunity to question Father about what funds, accounts, or resources he used to pay his expenses.

Father had over $7,000 in expenses per month, essentially zero wages, and other potential resources available to him. But the extent, value, and liquidity of those other resources were unknown.

### a. Expenses are not Resources

Considering the sparse evidence presented at trial related to Father's resources, it is enigmatic how the trial court arrived at its calculation of his net resources. It appears that the trial court used Father's monthly expenses as his monthly net resources; thus, there seems to be a presumption of parallelism between expenses and resources.

The hearing on Father's motion to modify, correct, or reform the judgment supports the conclusion that the trial court merely adopted Father's expenses as his net resources. At the hearing, Father explained that he was living in "the negative," urged the trial court to reconsider its calculation, and argued that expenses do not equate to net resources. The trial court responded, "What they're spending is what they have available to them each month." On its face, this conclusion sounds rational, but it contains a logical fallacy.

Unfortunately, many people regularly live beyond their financial means. To accept the trial court's reasoning would authorize courts to calculate net resources based on expenses instead of income and resources. Mother has not cited any authority, nor are we aware of any, that permits a trial court to use an obligor's monthly expenses—absent evidence of resources—in its calculation of one's net

14

resources. We do not subscribe to the trial court's rationale, and we see no well-founded correlation between an obligor's monthly expenditures and monthly net resources.

Texas Family Code Section 154.062 explicitly defines five resources that the trial court must use in calculating an obligor's net resources: (1) wages and salary; (2) interest, dividends, and royalty income; (3) self-employment income, (4) net rental income, and (5) all other income actually being received. Tex. Fam. Code. Ann. § 154.062(b)(1–5). Unmistakably absent from this list is an obligor's monthly expenses. *Id.* Expenses are not inherently synonymous with wages, salary, compensation, interest, dividends, or other income received; thus, they should not be employed as a substitute for probative evidence of resources in the calculation of an obligor's net resources.

Thus, disregarding Father's expenses, we are left with a record containing evidence of his lack of income and potential assets in bank accounts, business holdings, and real properties but nothing to substantiate the trial court's finding that Father has monthly net resources of $7,670.09.[12] That calculated amount, untraceable to Father's income or other available assets, is unsupported by the evidence. We

---

[12]In item 102 of its findings of fact and conclusions of law, the trial court listed several factors that it considered to rebut the presumption that guideline child support is in the best interest of the child. Tex. Fam. Code Ann. § 154.123. Yet this finding has no bearing on the calculation of the obligor's net-resource finding, nor does it rectify the lack of substantive or probative evidence.

conclude that there is no substantive or probative evidence to support the trial court's finding of Father's net resources.

### b. Finding of Intentional Unemployment

Mother argues that the child-support award can be affirmed because of the intentional-unemployment finding. But the trial court's finding of Father's intentional unemployment, in and of itself, does nothing—under the state of this record—to bolster its calculation of his net resources.

Mother maintains that Father's assets "seem to be extensive" and that the trial court's calculation of Father's net resources of $7,670.09 is founded in its determination that he is intentionally unemployed. While we agree that the record supports the finding that Father possesses exceptional educational credentials and that he retains other financial resources available to him, there remains no substantive or probative evidence that supports the trial court's calculation of his net resources. *Cf. Panozzo v. Panozzo*, 904 S.W.2d 780, 785 (Tex. App.—Corpus Christi–Edinburg 1995, no writ) ("Apparently, Husband is financially well off and has considerable resources available to him, but that belief is no substitute for evidence.").

Even if we presume that there is sufficient evidence to support the trial court's finding that Father is intentionally unemployed,[13] the finding is unaccompanied by

---

[13]This finding of intentional unemployment spurs us to consider its application to later-in-life parents. It is well-settled that a parent has a duty to provide support for his child, Tex. Fam. Code Ann. § 154.001, and that duty is not limited to the parent's ability to pay from earnings only but from any and all available sources. *See Johnson*,

2001 WL 371839, at *2. Nevertheless, the facts of this case pose unique circumstances for the applicability of Texas Family Code Section 154.066(a), and we have found minimal authority discussing the interplay between intentional unemployment and retirement, as well as parents with a considerable disparity in age. In his brief, Father discusses how "at some point a person is not able to maintain employment."

Texas jurisprudence contains little discussion on this specific topic. Courts in Washington have adopted an overall reasonableness test for determining whether a retired parent is voluntarily unemployed. *In re Marriage of Bundy and Rush*, 460 P.3d 1111, 1115 (Wash. 2020). Consideration of the overall reasonableness of a parent's retirement is also consistent with the law in other jurisdictions. The Florida Supreme Court held that "[i]n determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire." *See Pimm v. Pimm*, 601 So.2d 534, 537 (Fla. 1992); *see also Deegan v. Deegan*, 603 A.2d 542, 544 (N.J. Super. Ct. App. Div. 1992) (noting that the "reasonableness" of the early retirement should be a factor and explaining that "whether a spouse may voluntarily retire will depend on the individual circumstances of a particular case").

As for relevant general Texas law, a trial court has the discretion to apply the support guidelines to the earning potential of an obligor if it determines that he is intentionally unemployed or underemployed. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). Texas Family Code Section 154.066 simply states that a trial court *may* apply the child support guidelines to the earning potential of the obligor in an intentional unemployment or underemployment situation. While the permissive word "may" imports the exercise of discretion, "the [trial] court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within limits created by the circumstances of the particular case." *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956). The trial court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Id.* We also note that a parent's age is a circumstance the trial court can consider when applying Section 154.066(a). *See* Tex. Fam. Code Ann. § 154.0655 (listing relevant background circumstances, including an obligor's age, that the trial court may consider).

Here, Father is sixty-eight years old and worked as an emergency-room physician for forty years. Nevertheless, we make no conclusions as to whether he is intentionally unemployed or retired. We do reaffirm parents' duties to provide

substantive or probative evidence regarding his earning potential. Following its finding of intentional unemployment, the trial court was permitted to "apply the support guidelines to [Father's] earning potential." *See* Tex. Fam. Code Ann. § 154.066(a). And yet there was insufficient evidence for the trial court to exercise its discretion by applying the guidelines to Father's earning potential because neither he nor Mother brought forth evidence of his earning potential, such as his previous income as an emergency-room physician or what his compensation might be in a similar position.

Therefore, we conclude that the record lacks evidence of a substantive and probative character to support the trial court's monthly-net-resources finding. *See Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also M.G.*, 2023 WL 2178762, at *3–4 (concluding that evidence was insufficient to affirm child-support award because husband had failed to "provide evidence of [wife's] past or present resources" and had "merely estimated her earning ability via work and possibly her trust fund"). Accordingly, we hold that the trial court abused its discretion in its determination of Father's net resources, and we sustain his first issue. *See Panozzo*, 904 S.W.2d at 785 (holding that the trial court had abused its discretion by ordering husband to pay $10,000 per month in child support

---

support to their child, but caution trial courts to not presume retirement as intentional unemployment and encourage reasonableness in the discretionary application of an obligor's earning potential.

for two children even though "[t]here were references in the . . . record to substantial monies on deposit in Brownsville" because "there was no evidence offered of [h]usband's income or net resources as defined by the [Family] Code").

## B. CONSERVATORSHIP

In his second issue, Father essentially raises two complaints regarding the trial court's determination of the terms of conservatorship. First, he argues that the trial court failed to comply with Texas Family Code Section 153.072 by not making specific findings related to the limitation of his rights and duties as a parent. Second, he contends that the trial court abused its discretion by awarding Mother certain exclusive decision-making rights regarding M.M.M. We disagree with both complaints.

### 1. Standard of Review and Applicable Law

We review a trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex. App.—Dallas 2008, no pet.); *see also In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.) (reasoning that the trial court has "wide latitude in determining the best interests of a minor child").

An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.

19

1995); *see also Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Suits affecting the parent-child relationship are intensely fact driven. *See Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). We must be cognizant that the trial court is in a better position to decide custody issues because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). Throughout our review, we yield to the trial court's assessment of the witnesses' credibility and demeanor. *See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021); *In re F.A.*, No. 02-16-00156-CV, 2017 WL 632913, at *6 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op.). If the probative evidence conflicts, it is the trial court's prerogative to resolve the conflict and believe one witness over another. *See B.M.*, 2025 WL 211330, at *7; *In re E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at *6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.).

In determining conservatorship issues, the primary consideration of the trial court is the best interest of the child, and it has wide latitude in its best-interest determination. *See Gillespie*, 644 S.W.2d at 451.

### 2. Texas Family Code Section 153.072 is Satisfied

Father maintains that the trial court abused its discretion because "there was no finding by the trial court that [he] was somehow inappropriate or incapable of making appropriate decisions for [M.M.M.]" and because the trial court failed to make "required findings pursuant to Section 153.072 stating why it was limiting [his] rights

to make decisions concerning [M.M.M.]. He further argues that the trial court did not "make any findings as to whose fault it was that the parents are not capable of joint decision-making or being able to agree as to basic medical decisions regarding the child." This argument lacks merit because it seeks to impose requirements that are not contained in Section 153.072.

"If both parents are appointed as conservators of the child, the court shall specify the rights and duties of a parent that are to be exercised: (1) by each parent independently; (2) by the joint agreement of the parents; and (3) exclusively by one parent. Tex. Fam. Code Ann. § 153.071. In appointing joint conservators, the trial court must also designate the conservator who has the exclusive right to determine the primary residence of the child; specify the rights and duties of each parent regarding the child's physical care, support, and education; and include provisions to minimize disruption of the child's education, daily routine, and association with friends. *Id.* § 153.134(b)(1), (b)(2), (b)(3). Further, "[t]he court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child." *Id.* § 153.072. Here lies the heart of Father's complaint.

The trial court's final decree named Father and Mother as joint managing conservators of M.M.M. Pursuant to Section 153.071, the trial court duly specified the rights and duties of Father and Mother. Then, the trial court awarded certain exclusive rights to Mother, including the right to designate M.M.M.'s primary

21

residence; to consent to his medical, dental, and surgical treatments; and to make decisions concerning his education.

The trial court made the following findings of fact and conclusions of law regarding the rights and duties of Father and Mother:

103. The parties are not capable of joint decision-making.

104. The parties do not agree as to basic medical decisions regarding the child.

105. It is in the best interest of the child that [Mother] is granted the exclusive rights under §153.132 (1), (2), (3), (4), and (7) of the Texas Family Code.

106. The provisions for conservatorship and the allocation of rights and duties set forth in the Final Decree of Divorce are in the best interest of the child.

107. The access schedule set by this Court is in the best interest of the child.

Father maintains that these findings fail to explain why the trial court was limiting his rights to make decisions for M.M.M., yet further findings by the trial court regarding its best-interest determination are not required under Section 153.072. Rather, in limiting the rights and duties of a parent, the trial court must find that such a limitation is in the best interest of the child. *Id.* § 153.072. Here, the trial court's finding stated, "It is in the best interest of the child that [Mother] is granted the exclusive rights under §153.132 (1), (2), (3), (4), and (7) of the Texas Family Code." This written finding satisfies the requirements set out in Section 153.072—that such a limitation is in the best interest of M.M.M. *See Interest of D.L.N.*, 609 S.W.3d 237,

246–247 (Tex. App.—Texarkana 2020, no pet.).  We thus conclude that the trial court's limitation of Father's rights complied with Section 153.072.

### 3. Certain Exclusive Rights to Mother

Father contends that the trial court abused its discretion by awarding Mother certain exclusive rights because there was insufficient evidence to support those findings.  We again disagree.

Father's brief argues the exemplary caliber of his fatherhood, yet his contention does little to address the trial court's finding that he and Mother are incapable of joint decision making.  Every witness who testified at trial shared a common message: Father and Mother cannot effectively co-parent.  Even the trial court took time in the middle of trial to warn Father and Mother that their hostilities had to come to an end, stating, "Hopefully, you're not going to be spending the rest of your lives like litigants.  You might, though.  It sounds like it.  It scares me."

Regarding medical decision making, there have been actual conflicts regarding M.M.M.'s treatment due to the unworkable dynamic between Father and Mother.  For example, there were instances where Father treated M.M.M. without Mother's knowledge or took issue with the medication that M.M.M.'s pediatrician had prescribed him.  And although the counselor recommended that Father and Mother make mutual decisions for M.M.M. with the treating professional as the tiebreaker, the trial court was not bound to that recommendation.  The trial court had broad discretion in crafting the rights and duties of each conservator to promote M.M.M.'s

23

best interests. *See Swaab v. Swaab*, 282 S.W.3d 519, 532 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.). The trial court could have reasonably determined that, given their professions in healthcare and persistent disagreement, Father and Mother are unlikely to ever reach any mutual decisions for M.M.M.'s basic healthcare needs and treatment. Consequently, M.M.M.'s treating professional would always have to be the tiebreaker, and the trial court could have determined that such a circumstance would not be in M.M.M.'s best interest.

Whatever the reason for their conflict, there is ample evidence that Father and Mother cannot effectively co-parent. The trial court was therefore justified in selecting one parent as the exclusive decision-maker to avoid further conflict. Rather than taking a kitchen-sink approach, the trial court made a reasoned analysis in determining which decisions should be exercised exclusively by one parent because they are likely to arise more frequently than other matters over which the parties retain joint decision-making authority.

On this record and under the highly deferential abuse-of-discretion standard of review, we conclude that the trial court had sufficient information upon which to exercise its discretion to determine that it is in M.M.M.'s best interest to grant certain exclusive conservatorship rights to Mother. *See Johnson v. Johnson*, No. 03-19-00196-CV, 2020 WL 4726589, at *10 (Tex. App.—Austin Aug. 13, 2020, no pet.) (mem. op.) (observing that although there was no evidence that mother was unable to make decisions competently, there was "testimony about the parents' substantial difficulties

in co-parenting, communicating with each other, and handling appointments for the children"—as well as a finding that there was a reasonable expectation that the parents would be unable to reach shared decisions regarding the children in the future—that supported the trial court's decision to appoint father as the exclusive decision-maker).  We hold that the trial court did not abuse its discretion by awarding Mother certain exclusive rights concerning M.M.M., and we overrule Father's second issue.

## IV.  CONCLUSION

Having sustained Father's first issue, we reverse the portion of the trial court's judgment awarding child support and remand the case to the trial court for further proceedings in accordance with this opinion.  *See* Tex. R. App. P. 43.2(c); *see also Off. of Atty' Gen. of Tex. v. Burton*, 369 S.W.3d 173, 174 (Tex. 2012); *Moreno v. Perez*, 363 S.W.3d 725, 736 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (reversing child-support finding with no evidentiary support and remanding for further proceedings on trial court's net-resources findings); *Miles*, 229 S.W.3d at 390–91 (remanding trial court's calculation of appellant's net resources for further proceedings).   Having overruled Father's second issue, we affirm the remainder of the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Brian Walker
Brian Walker
Justice

Delivered:  July 10, 2025

25